Next case on the calendar is Car-Freshner Corporation v. American Covers and we have Mr. Orbach arguing for the appellant. Good morning. Defendants have never offered any explanation for why they came so close to a direct competitor's federally trademarked product names. The District Court itself found that the product name Midnight Black Ice Storm is confusingly similar to the product name Black Ice and that the product name Boardwalk Breeze is confusingly similar to the product name Bayside Breeze. The District Court also found there was sufficient evidence in the record for a reasonable jury to conclude that the defendants adopted these product names in bad faith with the intent to confuse. The email evidence of defendants' internal communications would certainly support that conclusion by a jury. With respect to Midnight Black Ice Storm, the defendants told themselves that their intent was for customers to immediately make the connection. Now, that's not important because infringement requires bad faith intent. It does not. Even innocent infringement can be a violation of the Lanham Act. It's important because the defendants are the ones who pin their livelihoods on understanding the Air-Freshner market. And therefore, a jury is entitled to consider whether defendants were successful in their stated plan for customers to immediately make the connection, whether it be a belief that these products were connected by source or sponsorship or approval, any of which would be a violation of the Lanham Act. The District Court, however, concluded that defendants' product packaging eliminated any such likelihood of confusion. That was plain error. There is no presumption in the law that the presence of a junior user's housemark or other differences in product packaging will obviate the likelihood of confusion, whereas here, a junior user adopts a direct competitor's product names or product names that are confusingly similar. Let me ask you, I know you addressed this in your briefs, but the District Court essentially, even though it did find that all these other factors the jury could conclude in your favor on that based upon the Nabisco case, that if the trade dress is so dissimilar, that it still can be decided on summary judgment. So do you want to address the Nabisco case, I guess the Playtex case as well? Yes, Your Honor. Starting with, well, Nabisco and Playtex are both distinguishable on one key factor, which is that in both cases, the wordmark that was being challenged included the defendant's own house brand. And in both cases, the defendant's own house brand was undisputedly famous. In Nabisco, the wordmark being challenged was Dentine Ice, and the parties were in agreement that Dentine was a famous brand in and of itself. In Playtex, the wordmark being challenged was Quilted Northern Moist Ones, and there was no dispute that Quilted Northern was a famous house brand in and of itself. Here, as the District Court found, the parties hotly contest the distinguishing power of the Refresh Your Car logo that appeared on defendant's product packaging with the infringing product names. The Refresh Your Car logo was not part of the wordmark being challenged, but even considering it, its distinguishing power is not undisputedly accepted as would be Dentine or Quilted Northern. There was no market research. There were no studies presented to the District Court to show that Refresh Your Car has any distinguishing power. In fact, the term Refresh Your Car on its face is merely a descriptive mark. It describes the function of the product to refresh your car. Let me see if I can just summarize what your position is. Your position is if you have what the District Court has said is a strong mark where the words could be confusing, jury could find the words are confusing, and you have bad faith and your displays are in the same area, it's a low-priced product, that the only situation where you could possibly find in favor of defendant on summary judgment would be if you had a famous house mark that was in the name itself, that essentially you could then determine that no consumer would be confused because that defendant's name, Dentine, Tylenol, Quilted North, Northern, is so famous the consumer will immediately know. That's essentially your position that absent those types of when you're all the other factors going this way, your way, that would be the only situation for summary judgment for a defendant. Certainly the Nabisco and Playtex cases go no further, Your Honor, and in the Bristol-Myers v. McNeil case, the Tylenol case, this court is careful to state that a junior user, the presence of a junior user's name, will not always alleviate the likelihood of confusion. Were the products in the same market in those cases? I believe in the Nabisco and the Playtex cases, they were in the same market, Your Honor. And you earlier called this market the air freshener market. Here, do you think it's the air freshener market or the car air freshener market? It is the automotive air freshener market that we're particularly focused on, Your Honor. When you say particularly, I mean, either that is the fair definition of the market or it isn't, and of course, that's a narrower market, I take it, than the air fresheners you put somewhere in your house. Yes, Your Honor, and my client, Little Trees, would certainly say that you can use their products outside of the automobile, and I don't know whether defendants would say that as well, but the market that we're talking about in this case is primarily the automotive air freshener market. Counsel, may I ask you a question based on what I understand to be the District Court's concern, because as you said, the District Court did recognize some confusion in the names and some intent to confuse factors that would operate in your favor. If I read the District Court's opinion correctly, what resulted in judgment against you was the District Court's view of how the items looked when you looked at them, and that here, it based it not only on the difference between the prominent use of Refresh, the brand label, and Little Trees, a very well-known label for your product, but also on the fact that, for instance, you've got the Black Ice name very prominently displayed. They have their names less prominently displayed and almost always, or indeed, always divided so that it's Midnight Black on one line, Ice Storm on another, or Midnight Black in one segment, Ice Storm in another, and that together with the difference in packaging, I won't try to get into all of the particulars, but yours with a brighter colors, yellow, red, green, theirs with darker colors, you know, black, gray, blue, that no consumer was going to be confused given these differences. Am I right that that's the crux of the District Court's view, and if so, why is that not one we would agree with? I think you're correct that that's the crux of the District Court's opinion, Your Honor, and the fundamental problem with that is that what you've just described embodies a number of factual inferences with which a reasonable juror could disagree. A reasonable juror could disagree with the factual inference that the District Court drew, for example, that the Refresher Car logo has distinguishing power that would alleviate confusion. No, no, I may have been wrong. I was just stating what you see. I mean, you don't dispute that Refresh is in a typeface much, much larger than Midnight Black and Ice Products. What you see, Your Honor, is undisputed. Now, we say we describe in our stick with that because that's what I understood the District Court to have relied on, that visually they are so different, the District Court suggested, that no juror could find that there was a reason that it was there was likely confusion. And Your Honor, as this court stated in Cadbury, it's one thing for the facts to be undisputed. But even if the facts are undisputed, if a reasonable jury could draw different factual inferences from those facts, then this is not the realm of summary judgment. And in this case, a reasonable jury could disagree with the District Court. How distinguishing. In what way? What would the District Court, what would the jury be able to find from this? That the differences that the District Court looked at in the product packaging were not so distinguishing so that a consumer spending just seconds at a crowded retail display would suffer from no likelihood of confusion. That is the factual inference and the factual conclusion that should be left for a reasonable jury in this case. And how about the aggregate? You focus on the one factor and I can understand why you would do that, but this is here on summary judgment and what do you understand our review is here as to the District Court's assessment that the in the aggregate, the Polaroid factors are so strong for the defendant as to support summary judgment. What do you say is the standard of review on at that stage of the case? The standard of review is DeNovo, your honor. As this court recently made clear in the Tiffany v. Costco case, the standard of review is DeNovo both on the District Court's findings with respect to each individual Polaroid factor and on the balancing of the factors in the aggregate. All right. I think your time is up, Mr. Orbach. Thank you. I see a few minutes for rebuttal. Mr. Brewster? Good morning. Bill Brewster representing the defendants. The lower court, as it was required to do, assessed the similarity of the marks in context and based only on undisputed facts involving the product packaging properly granted summary judgment based on a litany of differences in packaging and presentation creating a distinctly commercial impression. That decision should be affirmed. This court has repeatedly said that the Polaroid analysis is not a mechanical measure for the party with the greatest number of factors weighing in its favor wins. In fact, the District Court ruling is consistent with a long line of cases from this court holding the similarity of the mark factor in the Polaroid analysis can be dispositive and will warrant summary judgment for the defendant if the marks are so dissimilar that no question of fact is presented. Not only does Nabisco and Playtex say that, but this court's decision in Warner Brothers v. ABC authored by Judge Newman, a long line of District Court cases, Judge Bianco's decision in Conte v. Newsday, Judge Raggi's decision in Lapine v. Seinfeld, all apply the rule where the overall impression of the mark in the context in which the consumer sees it is so different that they cannot be confused as a matter of law. Mr. Brewster, the bottom line is why is that not an issue of fact in this case for the jury? Where the District Court found that the jury could find that there was a strong mark, that black ice is a strong mark. So then the question is, do these differences in the trade dress dispel what would otherwise be confusion? A consumer, the black ice mark could be so strong that notwithstanding the differences in the trade dress, the consumer would immediately, as soon as they saw the word black ice associated with the plaintiff's product. That's really what this case comes down to. Correct, Your Honor. But so to take that apart a little bit, assume you had a strong mark, similar goods, all of the things that all the other factors, what the District Court did and what this court has said is appropriate is that when you compare a trade market in entirety, not black ice, but midnight black and black ice at midnight black and ice storm, when you compare, this court has said an inquiry into similarity doesn't end with a comparison of the marks themselves. It would be error to compare only the marks. The marks have to be compared in context with all of the other features. So there is no use of midnight black ice storm that does not appear on a refresh your car package with a prominent refresh your car and a dark black and blue background. There are zero uses of black ice or base I breathe that don't have at the top of them, a prominent yellow background, the word little trees and red in the back and a green tree that says little trees. In fact, almost all of the products that are sold by plaintiff have a tree design on the front of it. So what the District Court is saying is in cases in which all of that is missing, there is no way that in context, consumers could confuse these two names in context. It would be, again, error for a District Court to pull out just the names and consider them, which is why the District Court here said, you can look at the names in isolation, but I'm not going to do that. I'm going to proceed to look at them in context. Council. What do you think is the market here for purposes of applying the Polaroid factors? So, as Council indicated, these products are used and promoted for a broader use than simply car air fresheners. They are used and promoted to be used in other kinds of vehicles in homes. Some of the products come in cans, which can be put under a chair. So are they marketed for that purpose? They are. Do we have any evidence in the record to that effect? Your Honor, as plaintiff's counsel just said, that's true. There is evidence in the record. It's not the overwhelming use, Your Honor. Is it fair to say they are primarily marketed as Okay. So let's take that as one fact that is in this case, that they're primarily marketed to the same consumer audience. Is it also clear that the words black ice are in both marks? No, Your Honor. I'm looking at them and I see them. So I'm a little surprised that you are denying that the words black ice are not in both marks. I'm sorry, Your Honor. Which part doesn't have them in your view? So, Your Honor, the defendant's mark in this case has the word black and it has the word ice, but in every situation. Well, then it has the words black ice. If it has each one, it has both. That's what I asked you. So I was a little surprised you denied that. So we've now agreed that both marks have the words black ice, right? Your Honor, I don't mean to take exception with the way you've described it, but what I would say is they have the words black and ice because ours always has midnight black in a circle. They both have the words black and ice. Correct. Okay. Yeah. All right. So we've established that. Is also something beyond dispute that the phrase black ice is a phrase known in the English language? It is, Your Honor. Okay. So now I'm going to put those facts together and ask you, have we or any court ever said that summary judgment is allowable as to two products that compete primarily in the same market and use the same words, whether or not preceded by another word or followed by another word, and those two words are a phrase recognizable by the public? Have we ever said a case with those ingredients can go off on summary judgment? Yes, Your Honor. This court affirmed that decision in Nabisco v. Warner-Lambert, where ice was used in each, coincidentally. This court affirmed the decision. That's one word, right? One word. I asked you about two words and two words. I take it while ice is certainly in the English language, but we've got two words which form a phrase recognized in the English language. That's what I asked you about. So when you tell me you know about a case with one word, that doesn't exactly answer my question of what case gives me the factors we've just been over a few minutes ago. Well, Your Honor is correct in that sense. I'm looking to see that we're talking about either ice or wet ones. There are situations in which the overlap was a single word as opposed to two, but it was a single word as opposed to, in those cases, one word and the addition of one word. In this case, it's two words and the addition of two words. I don't know that, Your Honor, the fact that there are two words as opposed to one word should make a difference in the way that the mark is approached, given that the test is the overall appearance and context. The key difference with Nabisco, as your adversary pointed out, was Dentine was in the name of the product and it was conceded that obviously Dentine, that house brand, is a household name and therefore because Dentine was in the name, it made it a situation where on summary judgment they could prevail. Refresh Your Car is not Dentine. So, Your Honor, it's not even the name of the product. Refresh Your Car is not even the name of the product. It's on the labeling, but it's not part of the name of the product and it certainly doesn't... Well, Your Honor, whether somebody would say Refresh Your Car, Midnight Black, Ice Storm or not, what this court has said is that the presence of a brand name, a trade name, a company name, not a famous one. In McGregor v. Drizzler and in other cases, this court has said that the presence of the name adds to the other collective differences. In Playtex, now Justice Sotomayor said that when the marks aren't identical, they aren't the same, the presence of a trade name tends to militate against confusion. In this case, Your Honor, the important part of the prominent name that you would hang your hat on, because in Dentine, the other party's mark was Breathsavers, not notable at all. But here, the argument that Little Trees has made in this litigation, in previous litigation, is that their tree-shaped paper products, the tree design mark, the Little Trees name, the yellow distinctive background with the red top and the green tree are all famous, and that those marks are known by the consuming public. The sea of yellow is what sells the product. So in the previous cases, one of the marks had a famous label attached to it. In this case, Your Honor, it could very well be that you would apply that to the fact that plaintiffs argued that everybody knows its product has that at top, and that the absence of that means that people know that it doesn't come from them or is not related to them. They don't take the position that Little Tree has some separate significance to Black Ice. I don't think they're conceding that their Little Tree itself is so famous, even when not all their products obviously hang in a tree form from the car. They're not conceding that. They're saying Black Ice in and of itself is famous and known and causes confusion. But Your Honor, Black Ice is never used apart from the Little Trees, the yellow background, and the rest of it. And that's exactly the compilation of elements that the court's supposed to look at, the district court's supposed to look at, and that it said gave it a different impression. And I do think that here, the court asked the question about what is the standard of review and how to assess that. And certainly, it's the case that Tiffany didn't change that. I would go back to the Patsey case from the Second Circuit. Judge Newman wrote, on undisputed facts, the district court is owed some deference in its subsidiary conclusions as to each poll rate factor. So there are no... It's subsidiary, but not aggregate. No, Your Honor, we're not... And the only factor, the district court below ruled that the differences in the marks themselves, that the entire lack of similarity of the marks in context was the basis on which the decision was made. So when the court... Let's take up one of the ones that we haven't talked about so far, and that is the bad faith. I take it it's undisputed that the officials of the company use a phrase, I'm either quoting it exact or I'm awfully close. In fact, that's their phrase. They said, let's see how close we can come. Did they use words to that effect? Well, Your Honor, let's say there's a fact issue on this. What they said... I want to go careful. Wait a minute. Don't tell me why it doesn't matter. The question was, did they use words to that effect? What they said, for instance, in one place... Did they use words to that effect? They either did or didn't. Your Honor, I would say that they used words to that effect, but they were talking about the product and not the name. For instance, they said they wanted to nail the scent. Did they use words to the effect, let's play with them? Yes, they definitely did that, Your Honor. They did that. All right. Now, if this case, despite your fondest hopes, were to get to a jury, and I'm not saying it will, but I'm asking you a hypothetical, if it were to go to a jury, and the jury was asked by the judge not just to come up with a finding, but to answer some interrogatories so that the judge had a clear idea if they understood Polaroid. The jury came back and they said, Judge, here's what we find. We find both marks use the same words. We find that those words, that black ice is a strong mark, as you've told us that term means. We also find that the bad faith of the defendant is of a very high order because of what we've found in the depositions. You've told us to weigh them all, but you didn't tell us what values to assign to them. Indeed, no appellate court has. If you want to know how we arrived at our verdict for the plaintiff, we're telling you, we thought the use of the two words being the same. The bad faith of the defendant was so strong that we are weighing the Polaroid factors in favor of the plaintiff. If we know all that from a jury, would you be able to say that jury verdict was wrong as a matter of law? Yes, your honor. And what I would throw out that verdict. And the reason you would, your honor, is your words in Warner Brothers versus ABC. If the comparison of marks reveal the lack of similarity in the marks themselves, then intent to copy, even if found from the evidence would not establish landmark violation. That was Superman. That was the superhero. You take shelter in that case. Well, not just that case, your honor. But as I said, this is a rule that's been applied by this court on a number of occasions and by district courts on a number of occasions to find that the similarity of the marks themselves in context as used with all the other elements that appear to a consumer, that they're so different. As Judge Braggie said, they look so different that a jury could not find a likelihood of confusion was a and that can't be proven. Okay, thank you. All right. Thank you, Mr Brewster. Mr Orbeck. You have two minutes. Judge, if I may go back to the question I was first asked by Judge Bianco, how are Nabisco and play tax different? Uh, some additional reasons or ways in which they are like it does here. Midnight black ice storm includes all of black ice in Nabisco. The plaintiff's mark was icebreakers and the defendant's mark was dentine ice. If it had been dentine ice breakers, perhaps it would have been a different case. And in play tax, the plaintiff's mark was wet ones and the defendant's mark was quilted northern moist ones. It did not include the full mark wet ones. Another fundamental way in which each of those decisions was different from the case at bar is that there was no evidence of an intent to confuse in either of those cases. In play tax, this court specifically found that there was no evidence of bad faith on the part of the defendants. And in Nabisco, we know from the district court opinion that there was also no intent to confuse in that case. The slippery slope that the district court opinion puts us on is that if a party like little trees has a successful trade dress, it cannot also protect its other successful marks from infringers of those marks unless the infringer goes ahead and that is not supported by the Lanham Act. We know the Lanham Act creates two separate causes of action, one for infringement and one for counterfeiting. The record here where you can when you consider all of the evidence submitted on all of the Polaroid fact is that is that I understand that's an interesting argument and there's a certain logic to it. But let me just you about it a little bit. We have said, for example, that if a company is so successful in promoting their mark that it becomes generic, ironically, they lose protection, right? Is that so? That is so, your honor. And why is it any more astonishing and more pertinently unlawful if a company so successfully promotes its trade dress as to get secondary meaning and overwhelm the consumer's impression with their trade dress that they then lose the argument that the mark is distinctive if the trade dress overwhelms it in appearance? Why? What's wrong with that argument? It has no place in this case, in this procedural setting, your honor, because this is a motion for summary judgment, and there is ample evidence in the record from which a jury could conclude that black. Well, that may be that may be. But I was just rising to your challenge that the success on one aspect of trademark law cannot, as a matter of law, overwhelm the other. That was the point I was discussing. It may be that on the facts of this case, that isn't so. But you were saying it just cannot be that the dominance of trade dress can make the similarity of marks irrelevant. In any event, I take your point. Thank you, your honor. All right. Thank you, Mr. Horvath. We'll reserve the decision. Thank you to both of you.